# Staunton

## TATTERSON'S EXECUTRIX V. FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

September 11, 1913.

Absent, Keith, P.

1. CONTRACTS—*Building Contract—Performance—Damages—Case in Judgment—Principal and Surety.*—A contractor gave bond with surety to build and complete a building according to certain plans and specifications. After partially fulfilling his contract, he gave up the job, and the owner let the completion of the building to another contractor for the balance agreed to be paid the first contractor. The second contractor gave the same surety for the performance of his contract that was given by the first contractor. The work was completed by the second contractor at a considerable loss, which was made good to him by the surety aforesaid. The surety thereupon sued the first contractor to recover the amount of the loss paid as aforesaid. The first contractor had nothing to do with the making of the contract for the completion of the unfinished building, and, in fact, knew nothing of it.

*Held:* The first contractor is in no way liable for the loss sustained by the second contractor, which was voluntarily paid by the common surety on the two bonds.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. Decree for the complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*R. R. Hicks,* for the appellant.

*J. W. Harper* and *Frank L. Crocker,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

On the 9th day of June, 1909, Elbert Tatterson, a general contractor doing business in the city of Norfolk, Va., entered into an agreement with the building committee of the Young Men's Christian Association of said city, by which he agreed to erect and complete for said association a building at a certain designated point in the city, at the price of $126,332. Article 5 of the contract provided, among other things, as follows:

"Should the contractor at any time refuse or fail to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architect, the Young Men's Christian Association should be at liberty, after three days written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architect shall certify that such refusal, neglect or failure is sufficient grounds for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon and to employ any other person or persons to finish the work, and to provide the materials therfor; and in case of such discontinuance ot the employment of the contractor, the contractor shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such

unpaid balance, the contractor shall pay the difference to the owner."

The building committee of the Y. M. C. A. required Tatterson to give a bond in the sum of $63,166.00, conditioned for the faithful performance by him of the contract, and accordingly, on July 3, 1909, he made application to the Fidelity and Deposit Company of Maryland (hereafter spoken of as the bonding company) to become surety on his bond for that amount. Pursuant to the rules and regulations of the bonding company, Tatterson filed with his written application a statement of his assets, which statement showed that among other property he owned real estate in the city of Norfolk at the corner of certain designated streets which he valued at $10,000 subject to a deed of trust for $1,400.

On the faith of this statement, it is claimed, the bonding company became surety on his said bond, which was made payable to the Y. M. C. A. of Norfolk, Va., and was conditioned for the faithful performance of Tatterson's contract to erect and complete said building.

Tatterson entered upon the performance of his contract and continued the work thereon until about December 27, 1910, on which date he wrote a letter to the Building Committee of the Y. M. C. A. which is as follows:
"Gentlemen:

"Owing to ill health, which, as you know, has for some weeks kept me confined to my room, and fearing that it will be some time before I will be able to get out and go to work again, I have concluded that I ought to abandon the contract for the construction of the Young Men's Christian Association building, at the corner of Granby and Freemason streets in this city, and accordingly thereby abandon the same.

"This is without prejudice to either your right or mine as to the various questions which have been raised by each side during the construction of this building."

On the receipt of this letter the building committee replied by letter, saying that they acknowledged that he (Tatterson) had abandoned the contract upon the conditions stated in his letter, and on the same day the bonding company was notified by a letter of the attorney for the Y. M. C. A. that Tatterson had abandoned his contract, and called upon the bonding company to comply with the terms of their bond and to make the necessary arrangements for the completion of the building. Before this, as it also appears, the chairman of the building committee, on December 6, 1910, had written to the bonding company, advising it that the work on the building had been at a standstill for some time, and notifying it that unless the work progressed more rapidly they would exercise the right they had under the contract to direct Tatterson to cease work on the building and call upon the bonding company to complete the contract.

Upon receipt of the letter from the counsel for the Y. M. C. A. of date December 27, 1910, the bonding company sent its representative to Norfolk, who made an investigation of the situation, and among other things it was ascertained that there would be a balance of $52,384.53 due Tatterson on the completion of the building, which balance was subject, however, to the claims of various mechanics and supply men who had filed liens or were about to do so. The bonding company had theretofore been advised that the building could not be completed with the balance that would be due Tatterson as per the contract. The bonding company did not, in accordance with its right under the terms of the bond, take charge of the building and complete it, nor did it sub-let the contract, but after some negotiations with the authorities of the Y. M. C. A., on January 16, 1911, a contract was entered into between Morrow Bros., contractors of Baltimore, Md., and the Y. M. C. A., whereby Morrow Bros. agreed to complete the building

for the amount which would have become due to Tatterson
on the completion thereof, viz., $52,384.53, and further-
more agreed to assume the payment of all valid claims for
which liens could be filed against the building.  In addition
to this Morrow Bros., contemporaneously with the execu-
tion of the said contract, executed a bond in the penal sum
of $54,000 to the Y. M. C. A. conditioned upon the faithful
performance of their duties under the contract, with the
said bonding company as surety, which bond was similar
in its provisions to that executed by Tatterson above re-
ferred to.  It further appears that Morrow Bros. were con-
tractors who sometimes represented the bonding company
in completing buildings which had been abandoned by con-
tractors for whom the bonding company might be surety,
when the bonding company took charge of the work of com-
pleting the building and that the bonding company would
reimburse them for any losses.

The building was completed by Morrow Bros., at a total
cost of $73,169.26, and after crediting on this the amount of
$52,716.25 which they had received from the Y. M. C. A.,
and which Tatterson would have received had he completed
the building, their net loss was $20,453.01.

It further appears that on April 1, 1909, Lizzie M. Tat-
terson, the wife of said Elbert Tatterson, executed a deed,
which she acknowledged before a notary public on April
14, 1909, whereby she conveyed to her said husband five
lots of land in the city of Norfolk and fully described in
the deed, which it is claimed by the bonding company was
executed by her for the purpose of enabling Tatterson to
obtain the bonding company as surety on his bond for the
performance of his contract with the Y. M. C. A., and the
real estate conveyed thereby is the same described as part
of his assets in his written application to the bonding com-
pany to become his surety.  The said deed from Lizzie M.
Tatterson to her husband was never recorded, but when

Charles A. Morrow, of the firm of Morrow Bros., came to Norfolk and took charge of the work of completing the building of the Y. M. C. A. he saw the deed on three different occasions in Tatterson's safe, which was in his office in the Dickson Building. It is claimed that Tatterson knew that Morrow Bros. were representing the bonding company in the completion of said building, and after Charles A. Morrow had entered upon this work he went to Tatterson's house and endeavored to induce him to give the bonding company some security for the loss that would be sustained in completing the building, which, as it would seem from Charles A. Morrow's statement, Tatterson agreed to do, and furthermore agreed to give a deed of trust on the specific real estate which his wife had conveyed to him to secure the bonding company against possible loss, or to raise money with which to pay such loss, but this was never consummated.

Tatterson died at his home in Norfolk on February 25, 1911, and a day or so after his death the said deed referred to was missing from the safe in his office. In June, 1911, the attorney for the bonding company had an interview with Mrs. Tatterson, and requested her to deliver up the deed in question so that it could be recorded and the property conveyed thereby subjected to the payment of the loss sustained by the bonding company in completing Tatterson's contract; but she, though admitting that she had the deed, declined to have it recorded, or to reimburse the bonding company for the loss sustained by it. Thereupon, the bill in this cause was filed by the bonding company against the said Lizzie M. Tatterson, in her own right and as executrix of the last will and testament of her deceased husband and others, for the purpose of establishing the claim asserted by the complainant against the estate of Tatterson for the amount of the loss alleged to have been sustained in the completion of said building and of sub-

jecting for its partial satisfaction the property conveyed to him from his wife by said deed.

Upon a hearing of the cause on the pleadings and the evidence adduced by the respective parties, the court below entered its decree of April 12, 1912, establishing the claim of the bonding company against the estate of Tatterson for $20,453.01, and adjudging that Tatterson died siezed and possessed of the real estate mentioned and.described in the deed in question from Lizzie M. Tatterson, his wife, to him, and that this real estate was assets for the payment and satisfaction of the claim of the bonding company. From this decree Lizzie M. Tatterson, in her own right and as executrix of her deceased husband, has taken this appeal.

The contentions of the appellant are: First, that the bonding company sustained no damages by reason of its suretyship for Elbert Tatterson, her husband, because Elbert Tatterson partially erected the building of the Y. M. C. A., and Morrow Bros. agreed to complete it for the unpaid contract money, so that Elbert Tatterson's contract was absolutely fulfilled; and, if the bonding company lost anything, it was by reason of its suretyship for Morrow Bros. rather than its suretyship for Elbert Tatterson; Second, that even if the claim asserted by the bonding company be valid, still the real estate sought to be subjected to its satisfaction was never the property of Elbert Tatterson, and, therefore, is not assets of his estate for the payment of his debts.

In the view we take of the case, it is only necessary to consider appellant's first contention, since if there be no liability upon the estate of Elbert Tatterson, deceased, for the claim asserted by appellee there can be none therefor upon the individual property of appellant sought to be subjected to the partial satisfaction of said claim.

As has been observed, the appellee, the bonding company, did not in accordance with its right under the bond exe-

cuted by Tatterson to the Y. M. C. A. take charge of the partially completed building in question and complete it, nor did it sub-let the same; on the contrary, Morrow Bros., on January 18, 1909, after full investigation as to the condition of the work on the building and ascertaining that there was a balance of $52,384.53 due Tatterson on its completion, which balance was subject, however, to the claim of various mechanics and supply men, who had either filed liens or were about to do so, entered into a new and independent contract with the Y. M. C. A., similar in all its details to the contract between Tatterson and the Y. M. C. A., by which Morrow Bros. agreed to complete said building at the price of $52,384.53, and furthermore agreed to assume the payment of all valid claims for which liens could be taken against the building. Contemporaneously with the execution of the contract, Morrow Bros. executed a bond in the penal sum of $54,000 to the Y. M. C. A., conditioned upon the faithful performance of their duties under the contract with the appellee as surety. With the making or entering into this contract Tatterson had nothing to do, and in fact knew nothing of it, so far as the record discloses. There is some evidence that Tatterson in an interview with one of the firm of Morrow Bros. and attorney Shultice recognized that, as he had abandoned his contract, there was a liability upon him for a possible loss that might be sustained by appellee if it undertook to complete the contract, and expressed a willingness to provide indemnity against such loss, but nothing was done in furtherance of this suggested course, and instead Morrow Bros. agreed with the Y. M. C. A. and appellee to take up the work of completing the building of the former as per the terms of Tatterson's contract, and for the contract price remaining unpaid by the Y. M. C. A., and for the faithful performance of this contract on the part of Morrow Bros. appellee became their surety. The fact that Morrow Bros. lost instead of made money on their con-

tract, which loss appellee chose to make good, does not alter
the case.  The Y. M. C. A., as appellant contends, had no
right against appellee, save such as accrued out of the
surety's bond, executed to it by Tatterson.  They were en-
titled to and needed no other contract than the one they al-
ready had upon which they are asserting no claim, and
when Morrow Bros. undertook to complete the building for
the amount of money that would have gone to Tatterson
had he completed it, they did so, not only with the assent
of the Y. M. C. A. and appellee, but after careful inquiry
and investigation and in the belief that they could profita-
bly complete the building at that price.  Had it cost Mor-
row Bros. less to complete the building than the price
agreed on between them and the Y. M. C. A., they would
have realized a profit as they had expected, and it would
have been theirs, and no one could have sustained a claim
on behalf of Tatterson's estate for any part thereof.  The
profit on their contract, if it had been realized by Morrow
Bros., would have been theirs, and the loss sustained by
them they must, of course, bear so far as Tatterson's estate
is concerned; and the fact that appellee volunteered, as it
appears, to make good this loss to Morrow Bros., gives it
no right whatever to recover the amount so paid of Tatter-
son's estate for which it is not in any respect liable.

We are of opinion, therefore, that the decree appealed
from, in so far as it establishes the claim asserted by ap-
pellees as a liability upon the estate of Elbert Tatterson,
deceased, and adjudges that certain real estate of the ap-
pellant, held in her own right, is liable for the partial pay-
ment of the said claim, is erroneous, and the decree in this
respect is reversed and annulled, with costs to appellant;
and the cause, which has, upon petitions filed therein by
certain creditors of Elbert Tatterson, deceased, become a
general creditor's suit for the settlement of his estate, is
remanded for further proceedings therein not inconsistent
with the views expressed in this opinion.

*Reversed.*